UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LOUIS RINALDI, | : | CIVIL ACTION NO. |
|    *Plaintiff,* | : | 3:02CV1524(WWE) |
| | : | |
| v. | : | |
| | : | |
| SCOTT MARTIN AND FRED OLDENBURG, | : | |
|    *Defendants.* | : | June 2, 2004 |

**DEFENDANTS' LOCAL RULE 56(a)(1) STATEMENT
OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Local Rule 56(a)(1), the following material facts are not in dispute for the purpose of ruling on the present motion for summary judgment. The exhibits, affidavits, and deposition transcripts accompany this Statement as an appendix under separate cover; all page numbers referred to herein are to the Bates stamped pages of the appendix ("App."); the page numbers for the transcript of Mr. Rinaldi's deposition are also listed ("Trans."), as it is reprinted in the appendix in quarter-page format.

1. Plaintiff Louis Rinaldi entered state service in 1973 at the Department of Labor. Rinaldi Dep., App. at 102, Trans. p. 8, lines 19-24. He moved to the Department of Public Safety ("DPS") in 1978 as a Senior Computer Operator. Rinaldi Dep., App. at 102, Trans. p. 9, lines 5-11; Savitski Affidavit, App. at 186, ¶ 4. Rinaldi began his career at DPS in the computer operations unit. Rinaldi Dep., App. at 103, Trans. p. 10, lines 3-10.

2. In 1983 Rinaldi was promoted to a Supervisor I position in the computer operations unit. Savitski Affidavit., App. at 186, ¶ 4. In 1986, Rinaldi was promoted to Computer Operations Supervisor II. Id. With his promotion, he was made responsible

for the computer operations unit's new multi-shift operation. At that time, he reported to Mr. Daniel Cawley. Rinaldi Dep., App. at 103, Trans. pp. 13, line 2 through 14, line 21.

3. The computer operations unit, and a unit that handled computer programming, were both under the supervision of Cawley until he was laid off in 1991. Savitski Affidavit, App. at 186, ¶ 5.

4. From 1989 until his retirement in June of 2003, Defendant Frederick Oldenburg managed the computer programming unit. He reported to Cawley until Cawley was laid off in 1991. Oldenburg Affidavit, App. at 121, ¶ 4; Savitski Affidavit, App. at 186, ¶ 5. From that time until his retirement, Oldenburg directly supervised the computer programming unit, and supervised the computer operations unit through a Computer Operations Supervisor II. Oldenburg Affidavit, App. at 121, ¶ 4.

5. From 1991 until 1997, Louis Rinaldi was the Computer Operations Supervisor II who was in charge of the computer operations unit. Oldenburg Affidavit, App. at 121, ¶ 4.

6. Defendant Scott Martin is a Captain in the Connecticut State Police. In January of 1999, he was placed in command of the what was, at that time, the Department of Public Safety's Bureau of Telecommunications. Martin Affidavit, App. at 150, ¶ 3. Several managers, including Oldenburg, reported to him, and he reported to a lieutenant colonel in commanded the Office of Administrative Services. Id.

7. Prior to his appointment as the commanding officer of the Bureau of Telecommunications, Martin had done tours of duty at Professional Standards, the Major Crimes Unit, Troops F, K, and E, and the Westbrook Resident Trooper program. Martin Affidavit, App. at 151, ¶ 4. Martin had never supervised Rinaldi, either directly or indirectly, before January 1, 1999. Martin Affidavit, App. at 151, ¶¶ 5-6.

8. In 1997, Rinaldi was the subject of an Internal Affairs Investigation. Rinaldi Dep., App. at 106, Trans. p. 24, lines 11-23. The complaint concerned allegations that Rinaldi was signing off on timesheets of an employee that did not accurately reflect the hours the employee had worked, and that Rinaldi was aware the time sheets did not accurately reflect the employee's hours. Traverso Miller Affidavit, Exh. A (Internal Affairs Investigation), App. at 157.

9. Neither Oldenburg, who at that time was Rinaldi's immediate supervisor, nor Martin, who was working at Professional Standards at the time, had anything to do with the initiation of the internal affairs investigation into Rinaldi's conduct. Oldenburg Affidavit, App. at 122, ¶ 5; Martin Affidavit, App. at 151, ¶ 5.

10. Rinaldi's Internal Affairs investigation was conducted by Sergeant Eric Stevens, and endorsed by Lieutenant John Mannion. The final decision on the investigation was made by Lt. Colonel Marjorie Kolpa on March 4, 1998. Traverso Miller Affidavit, Exh. A (Internal Affairs Investigation), App. at 156. Rinaldi Dep., App. at 107, Trans. pp. 28 line 22 through 29 line 1. Lieutenant Colonel Kolpa sustained two charges: failure to supervise, and filing false documents or information. Traverso Miller Affidavit, Exh. B, App. at 172-73.

11. Oldenburg was a witness in the investigation, but was not involved in any other way. Oldenburg Affidavit, App. at 122, ¶ 5. He did not make any recommendations concerning the disposition of the investigation, and was not involved in the decision to sustain the charges. Id. Martin was not involved in the Internal Affairs Investigation of Rinaldi at all. Martin Affidavit, App. at 151, ¶ 5.

12. The discipline imposed by Colonel Kolpa as a result of the Internal Affairs Investigation was a demotion to a Computer Operator Supervisor I and a 60-day suspension. Traverso-Miller Affidavit, Exh. B (Kolpa Letter), App. at 172-73.

13. Neither Oldenburg nor Martin had any input into the discipline that was imposed upon Rinaldi by Colonel Kolpa. Oldenburg Affidavit, App. at 122, ¶ 6; Martin Affidavit, App. at 151, ¶ 5.

14. Rinaldi filed a grievance concerning the discipline that was imposed following his 1997/1998 Internal Affairs Investigation. Traverso Miller Affidavit, App. at 155, ¶ 5. Rinaldi settled his grievance by a Stipulated Agreement on March 1, 1999. Id., ¶ 6. Under the terms of the stipulation, Rinaldi agreed to be assigned to "special assignments of a technical nature" not involving any supervisory duties. Traverso Miller Affidavit, Exh. C (Settlement Agreement), App. at 175, ¶ 5. His 60-day suspension was rescinded, and his title of Computer Operations Supervisor II was restored. Traverso Miller Affidavit, Exh. C, (Settlement Agreement), App. at 174, ¶¶ 2 & 3.

15. The Stipulation specifically included an acknowledgement by Rinaldi that "this settlement fully and finally resolves all issues that he has concerning the grievances that have been cited in item 1" including the grievance that involved the Internal Affairs investigation. Traverso Miller Affidavit, Exh. C, (Settlement Agreement), App. at 174, ¶ 14. The Stipulation further indicated that "[w]ith this acceptance Mr. Rinaldi waives any future claims in any forum concerning the issues of the grievances . . . ." Id.

16. Following the disciplinary proceedings, Rinaldi was assigned to the programming unit, where he was directly supervised by Defendant Oldenburg. Rinaldi Dep., App. at 112, Trans. pp. 46, line 16 through 47 line 8; Oldenburg Affidavit, App. at 122, ¶ 7.

17. Neither Defendant Oldenburg nor Defendant Martin had any input into the decision to assign Rinaldi to the programming unit following the imposition of discipline. Oldenburg Affidavit, App. at 122, ¶ 6; Martin Affidavit, App. at 151, ¶ 5.

18. In the 1996-1997 time period, Mr. George Davis was a supervisor for the CTS Project, which was part of the Bureau of Support Services. Savitski Affidavit, App. at 187, ¶ 6.

19. George Davis was the subject of an internal affairs investigation in late 1996 and early 1997. Samuels Affidavit, Exh. A, App. at 180. The investigation was prompted by a complaint that Davis was signing off on timesheets of an employee ("routines") that did not accurately reflect the hours the employee had worked, and was doing so without question or correction. Samuels Affidavit, App. at 178, ¶ 4. The charges investigated were violations of the Department's Administration & Operations Manual and Falsifying documents or information. Id., ¶ 5. Following investigation, the former charge was sustained, and the latter was not sustained. Id., ¶ 6. Davis received no discipline. Id.

20. Davis' Internal Affairs investigation was conducted by Detective Edwards, and its findings endorsed by then-Lieutenant Paul Samuels. Samuels Affidavit, App. at 178, ¶ 3. The final decision on the investigation was made by then-Major John F. Bardelli. Id., ¶ 6.

21. Neither Martin nor Oldenberg ever supervised George Davis. Neither defendant was involved in any way with the internal affairs investigation of George Davis. Oldenburg Affidavit, App. at 123, ¶ 10; Martin Affidavit, App. at 152, ¶ 8.

22. George Davis retired from the Department of Public Safety on July 31, 1997. Savitski Affidavit, App. at 187, ¶ 7. He also returned as a "re-hired" employee

from August 29, 1997 until June 30, 1998.  Id.  He has not worked for the Department since that time.  Id.

23. George Davis did not receive another performance evaluation subsequent to his Internal Affairs investigation.  Savitski Affidavit, App. at 187, ¶ 8 (provides date of last performance evaluation); Samuels Affidavit, Exh. A, App. at 180 (provides date of IA).

24. Rinaldi joined the Connecticut State Employees Association ("CSEA") in 1987.  Rinaldi Dep., App. at 105, Trans. p. 20, lines 11-23.  He became a union steward in 1992.  Id., Trans. p. 21, lines 2-5.  As a union steward, Rinaldi filed grievances, attended regular meetings, kept employees abreast of changes, and assisted in contract negotiations.  Id., lines 10-13.

25. Martin had no problem with the union, with Rinaldi's membership in and position with the union, or his union activities.  Martin Affidavit, App. at 152, ¶ 9.  Martin was himself a union member until he was promoted to the rank of Lieutenant in 1995.  Id.

26. Martin never gave Rinaldi any indication that he had a problem with Rinaldi's union activities.  Rinaldi Dep., App. at 115, Trans. pp. 59, line 24 though 60, line 2.

27. Oldenburg never gave Rinaldi trouble about being absent from work when representing people in his capacity as union steward.  Rinaldi Dep., App. at 115, Trans. pp. 60, line 24, through 61, line 5.  Although Rinaldi recalled having discussions with Oldenburg where Oldenburg indicated disagreement with certain union positions, Rinaldi did not recall Oldenburg saying anything that would indicate that he had a problem

with the union itself. Rinaldi Dep., App. at 116, Trans. pp. 63, line 25 through 65, line 13.

    28.    Oldenburg had no problem with the union or with Rinaldi's work for the union. Oldenburg Affidavit, App. at 123, ¶ 11. Oldenburg paid dues to the union during his entire employment with the Department of Public Safety, so that he could have union representation if necessary. Id.

DEFENDANTS,

SCOTT MARTIN AND
FRED OLDENBURG

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:_____
    Mark P. Kindall
    Assistant Attorney General
    55 Elm Street
    P.O. Box 120
    Hartford, CT 06141-0120
    Tel: (860) 808-5340
    Fax: (860) 808-5385
    Federal Bar No.: ct13797
    E-Mail: Mark.Kindall@po.state.ct.us

## **CERTIFICATION**

      I hereby certify that a copy of the foregoing Rule 56(a)(1) Statement was mailed this 2d day of June, 2004, first class, postage prepaid to:

John R. Williams, Esq.
WILLIAMS & PATTIS, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

                                                _____
                                                Mark P. Kindall
                                                Assistant Attorney General