### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LOUIS RINALDI, | : | No. 3-02-cv-1524(WWE) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SCOTT MARTIN and | : | |
| FREDERICK OLDENBURG, | : | |
|     Defendants. | : | |

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This action concerns alleged mistreatment taken against plaintiff Louis Rinaldi, an employee in the state Department of Public Safety ("DPS"), by his supervisors Scott Martin and Frederick Oldenburg, which treatment plaintiff claims violated the equal protection clause of the Fourteenth Amendment, and the First Amendment to the United States Constitution.

The defendants have moved for summary judgment as a matter of law. For the following reasons, defendants' motion will be granted.

### Background

Plaintiff and defendants have both submitted statements of facts in compliance with Local Rule 56 and have attached evidentiary materials, including exhibits and affidavits. These submissions reveal the following undisputed facts.

Plaintiff Louis Rinaldi commenced his career at the Department of Public Safety in 1978 as a Senior Computer Operator in the computer operations unit. In 1983, he was promoted to a Supervisor I position, and in 1986, he was promoted to Computer Operations Supervisor II. In this position, he was responsible for the

computer operations unit's new multi-shift operation.

In 1987, Rinaldi joined the Connecticut State Employees Association ("CSEA"), and became a union steward in 1992. As a union steward, Rinaldi filed grievances, attended regular meetings, kept employees abreast of changes, and assisted in contract negotiations.

From 1991 to 1997, plaintiff reported to defendant Frederick Oldenburg, who was at that time in charge of DPS' computer programming and computer operations units.

Defendant Scott Martin[1], a Captain in the Connecticut State Police, became one of plaintiff's supervisors when he was placed in command of what was then known as DPS' Bureau of Telecommunications in January, 1999. Several managers, including defendant Oldenburg, reported to him, and he in turn reported to a lieutenant colonel in the Office of Administrative Services.

In 1997, Rinaldi became the subject of an Internal Affairs Investigation concerning allegations that he had signed off on timesheets of an employee that did not accurately reflect the hours that the employee had worked. The complaint alleged that Rinaldi was aware that the time sheets did not accurately reflect the employee's hours.

This investigation was conducted by Sergeant Eric Stevens, and endorsed by Lieutenant John Mannion. The final decision on the investigation was made by Lieutenant Colonel Marjorie Kolpa on

_____

[1]Defendant Martin was a union member until he was promoted to rank of Lieutenant in 1995.

2

March 4, 1998.  Lieutenant Colonel Kolpa sustained two charges: (1) failure to supervise, and (2) filing false documents or information.  The discipline imposed by Lieutenant Colonel Kolpa was a demotion to a Computer Operator Supervisor I and a 60-day suspension.

Oldenburg and Martin both aver that they were not involved in the investigation into plaintiff's misconduct, except that Oldenburg admits that he was interviewed by a person conducting the investigation.  Oldenburg and Martin both aver further that they had nothing to do with Lieutenant Colonel Kolpa's decision to sustain the charges against plaintiff or to impose discipline.

Rinaldi filed a grievance concerning the discipline that was imposed following his 1997/1998 Internal Affairs Investigation. Rinaldi settled his grievance by a stipulated agreement on March 1, 1999.  Under the terms of the stipulation, Rinaldi agreed to be assigned to "special assignments of a technical nature" not involving any supervisory duties.  His 60-day suspension was rescinded, and his title of Computer Operations Supervisor II was restored.

The stipulation included an acknowledgment by Rinaldi that "this settlement fully and finally resolves all issues that he has concerning the grievances that have been cited in item 1," including the grievance relative to the internal investigation. The stipulation also stated that Rinaldi "waives any future claims in any forum concerning the issues of the grievances. . . ."

Following the disciplinary proceedings, Rinaldi was assigned

to the programming unit where he was directly supervised by defendant Oldenburg. Neither Oldenburg nor Martin had any input into the decision to assign Rinaldi to the programming unit following the imposition of discipline.

For purposes of his equal protection claim, plaintiff alleges that he is similarly situated to George Davis, who was the subject of an internal affairs investigation in late 1996 and early 1997. That investigation, which was conducted by a Detective Edwards, also concerned a complaint that Davis was signing off on timesheets of an employee that did not accurately reflect the hours the employee had worked, and was doing so without question or correction. The charges investigated were (1) violation of the Department's Administration & Operations Manual and (2) Falsifying documents or information. Following the investigation, the findings were endorsed by then-Lieutenant Paul Samuel, and a final decision on the investigation was made by then-major John Bardelli. Only the charge of violating the Department's Administration & Operations Manual was sustained, and Davis received no discipline.

It is undisputed that neither Martin nor Oldenburg ever supervised Davis, and that neither defendant was involved with the internal affairs investigation related to Davis.

Davis retired from DPS on July 31, 1997. He returned as a "re-hired" employee from August 19, 1997 until June 30, 1998, but he never received an evaluation during that time. He has not since worked for DPS.

4

## Discussion

A.  Standard of Review

        A motion for summary judgment will be granted where there is
no genuine issue as to any material fact and it is clear that the
moving party is entitled to judgment as a matter of law.  Celotex
Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when
reasonable minds could not differ as to the import of the
evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.
2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

        The burden is on the moving party to demonstrate the absence
of any material factual issue genuinely in dispute.  American
International Group, Inc. v. London American International Corp.,
664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a
genuine factual issue exists, the court must resolve all
ambiguities and draw all reasonable inferences against the moving
party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255
(1986).  If a nonmoving party has failed to make a sufficient
showing on an essential element of his case with respect to which
he has the burden of proof, then summary judgment is appropriate.
Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits
evidence which is "merely colorable," legally sufficient
opposition to the motion for summary judgment is not met.
Anderson, 477 U.S. at 249.

    Equal Protection

        Plaintiff alleges that he was treated more severely than
George Davis in violation of the equal protection clause of the

Fourteenth Amendment.

Although plaintiff does not allege that he is a member of a protected group that was treated differently, he may pursue his equal protection claim as a "class of one." <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).  Pursuant to <u>Olech</u>, plaintiff must prove that he has been intentionally treated differently than similarly situated individuals, and that there is no rational basis for the difference in treatment.

Defendants first argue that the conduct prior to August 30, 1999, including the internal investigation, the suspension and demotion, are time barred by the three year statute of limitations.[2]  <u>See</u> <u>Porter v. Nussle</u>, 534 U.S. 516, 521 n. (2002)(statute of limitations for Section 1983 cause of action is three years).  Thus, only post-disciplinary conduct may form the basis of plaintiff's claim.  Plaintiff states that the equal protection claim is not based on the discipline imposed in 1998, and clarifies his claim as follows:

> The plaintiff argues that the defendants were the ones who punished him, particularly in the period after he had successfully obtained a major reduction of his official punishment through the collection bargaining process.  The plaintiff contends that defendants imposed "off the books" punishment upon him knowing that the other employee, found to have engaged in the same behavior, was not so punished. Thus, the defendants knowingly caused the plaintiff to be disciplined in a way they knew the other comparable person was not.

The post-disciplinary conduct by the defendants includes, <u>inter</u> <u>alia</u>, allegedly unfair poor performance ratings, lack of

_____

[2]The complaint was filed on August 30, 2002.

adequate training, rude and unprofessional treatment, having his requests for ergonomic equipment ignored, and being compelled to share a cubicle. As an initial matter, plaintiff cannot prevail because George Davis is not a "similarly situated" individual to serve as a comparator of post-disciplinary treatment.

The alleged similarly situated employees must have a situation sufficiently similar to support at least a minimal inference that the disparate treatment may be irrational. See McGuinness v. Lincoln Hall, 263 F. 3d 49 (2d Cir. 2001)[3]. In determining whether an employee is similarly situated, a court must look at all relevant factors within the context of the case. Patterson v. Avery Dennison Corp., 281 F. 3d 676, 680 (7th Cir. 2002). Here, it is undisputed that neither defendant ever supervised Davis, and that Davis retired shortly after the conclusion of the investigation into his misconduct without receiving a post-disciplinary performance evaluation. These differences are significant and render Davis an unsuitable comparator of post-disciplinary treatment.

Further, even if plaintiff sought to base his equal protection claim on the pre-1999 conduct, Davis is still not a suitable comparator. Both Davis and plaintiff were charged with similar offenses. However, the circumstances of the two individuals differ with respect to the decision-makers involved and the charges that were ultimately sustained as a result of the

---

[3]In reviewing the "similarly situated" analysis, the court may rely on analogous Title VII precedent. Diggs v. Town of Manchester, 303 F. Supp. 2d 163, 178 (D. Conn. 2004)

investigation.   See Radue v. Kimberly-Clark Corp. 219 F. 3d 612,
618 (7th Cir. 2000)(Different employment decisions made by
different supervisors are seldom sufficiently comparable).  Thus,
the Court will grant summary judgment on the equal protection
claim.

First Amendment Retaliation

Plaintiff claims that he was mistreated by defendants
because of his association with his union.  In his deposition,
plaintiff testified that the retaliation claim was based on his
work as a union steward.  However, the opposition brief states
that "[i]t was the successful prosecution of a grievance under
the collective bargaining agreement which produced the
retaliation - not accepting the position of union steward."  The
Court construes the complaint as asserting retaliation on the
basis of plaintiff's work as a union steward and on his
successful prosecution of the grievance.

A public employee bringing a freedom of association claim
must demonstrate that the associational activity touched on a
matter of public concern   Cobb v. Rouse, 363 F. 3d 89, 107 (2d
Cir. 2004).  As Cobb explained, the allegedly protected
expression must be a substantial or motivating factor in the
decision to take the adverse employment action. A plaintiff can
establish the requisite causal connection indirectly by showing
that the protected activity was followed by adverse treatment in
employment, or directly by evidence of retaliatory animus.
Morris v. Lindau, 196 F. 3d 102, 111 (2d Cir. 1999).

Whether a public employee or contractor's expressive conduct addresses a matter of public concern is a question of law to be determined in light of "the content, form, and context" of the expressive conduct "as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-148 (1983).

In Connick, the Supreme Court held that questions pertaining to office morale, the need for a grievance committee, and the office transfer policy did not address matters of public concern, but that the question whether employees felt pressure to work on political campaigns did address a matter of interest to the community and was therefore of public concern.  Courts have held that an employee's filing of a grievance relative to a personal employment dispute is not of public concern.  See Coszalter v. City of Salem, 320 F. 3d 968, 973 (9th Cir. 2003)(speech that concerns personal employment disputes and grievances is generally not of public concern); Galligan v. Town of Manchester, 2003WL21146710 (D.Conn. 2003)(filing a union grievance relative to alleged harassing conduct, job duties, and need for reasonable accommodation had nothing to do with matters of public concern). Here, plaintiff's successful prosecution of his grievance concerns his "constructive demotion," a matter wholly related to him personally that is not of interest to the community.  Thus, the Court finds that this claim does not merit First Amendment protection.

For purposes of ruling on this motion, the Court assumes that plaintiff's activity as a union steward presents a matter of

9

public concern.  However, plaintiff's claim fails nevertheless
because he proffers no evidence from which a reasonable jury
could find that the alleged mistreatment was motivated by his
protected associational activity.  Plaintiff became a union
steward in 1992.  As observed in <u>Cobb</u>, plaintiff's longstanding
union membership makes it "highly implausible" that his union
association was a motivating factor in the adverse employment
action.  363 F. 3d at 109.  Furthermore, Martin had been a union
member prior to 1995, and Oldenberg paid dues to the union during
the entire time he worked for DPS.

Plaintiff offers no evidence giving rise to an inference of
retaliatory motive, and thus, summary judgment will be granted on
the First Amendment retaliation claim.

Conclusion

For the foregoing reasons, defendants' Motion for Summary
Judgment [doc. # 30] is GRANTED.  The clerk is instructed to
close this case.

SO ORDERED.


_____/s/_____

Warren W. Eginton
Senior United States District Judge


Dated this 5th day of November, 2004 in Bridgeport,
Connecticut.

10